City of New Orleans, Praying to Be Put in Possession.

No. 12,958.

IN THE MATTER OF THE CITY OF NEW ORLEANS, PRAYING TO BE PUT IN POSSESSION.

SYLLABUS.

When an assessment made of real estate with certain name and description is valid, either of itself or rendered so by reason of confirmatory action of the owner, publication and sale of same in the same name and with the same description will convey a title to the purchaser that will be upheld as against the delinquent tax-payer and his heirs and assigns.

Notice of proceedings for the sale of property for delinquent taxes, is sufficient if it conform to the requirements of the State revenue law—same not being analogous to the citation which is prescribed by the Code of Practice.

ON APPEAL from the Civil District Court for the Parish of Orleans. *Monroe, J.*

*Wynne Rogers* for Plaintiffs in Injunction, Appellees.

*Saml. L. Gilmore,* City Attorney, and *W. B. Sommerville,* Assistant City Attorney, for City of New Orleans, Defendant in Injunction, Appellant.

Argued and submitted March 10, 1899.
Opinion handed down March 20, 1899.
Rehearing refused May 1, 1899.

The opinion of the court was delivered by

WATKINS, J.  Proceedings were inaugurated in the premises by the petition of the city attorney, for an order of seizure and possession, directed to the civil sheriff, and commanding him to seize the property described, and to place the city in actual possession thereof—the property being known as lot No. 26 in square 200, bounded by St. Charles, Prytania, Euterpe and Polymnia streets, measuring 26 feet front on St. Charles street, by 127 feet, 10 inches and 3 lines in depth.

Said order was predicated upon an alleged purchase of said piece of property by the city with its improvements, at a public sale made for the delinquent taxes of the years 1889, 1890, 1891, 1892, 1893 and 1894, which was made on December 2, 1895, as will more fully appear by an act of sale passed before Taylor, notary, on December 13, 1895, and registered in the conveyance office, book 162, folios 113 to 116, which is made a part of the petition.

In the act of sale it appears, that this property had been assessed in the years specified, in the name of Widow Martha F. Churchill and minors, and of Widow Martha F., Charles R., and Miss Ida Churchill, and that under this assessment, the property was advertised and sold, and the same was bid in for, and adjudicated to the city, at the total price of $844.63—the same being the total amount of city taxes due by, and on said property for said years.

It further appears that it was sold under, and in pursuance of the provisions of Acts No. 119 of 1882, and No. 85 of 1888, and other laws in such cases made and provided.

To this proceeding, Charles R. Churchill and Mistress Ida Churchill, wife of J. F. Thomas, Jr., obtained an injunction against the issuance of said writ of seizure and possession.

In their petition they alleged, that the adjudication and sale of the aforesaid property to the city are absolutely null and void; (1), because the property was wrongfully assessed for the years for which the alleged sale was made, in the name of a party not the owner; (2), that said property was advertised for sale in the name of a party, not the owner; (3), that the description of said property on the assessment rolls for the aforesaid years was incorrect, defective and insufficient,

.and the assessment was illegal for want of certainty in its description; (4), that the advertisement of sale was illegal because of those wrongful and defective descriptions of said property; (5), that your petitioners were never served with a notice of seizure and sale of said property as required by law.

To this injunction suit, the city made a general denial; and, upon the trial, judgment was rendered in favor of the plaintiffs, and against the city, perpetuating the injunction.

It further decreed that the sale and adjudication to the city was illegal, null and void; and it ordered that the inscriptions of the said sale be cancelled.

It is from that judgment that the city has appealed.

An inspection of the record, as well as the argument in briefs and orally, disclose, that the first three grounds of objection are the same, in substance—that is to say—that the assessment was erroneous to the extent that Mistress Martha F. Churchill, widow, was named as one of the joint owners of the property, whereas, in point of fact, it is owned by the two plaintiffs in injunction solely, and in indivision, as the heirs of their father.

The record shows, that Charles H. Churchill died on the 26th of April, 1868, and that his widow, Mistress Martha P. Churchill, was appointed as tutrix on the 10th of March, 1883, for her two minors, Charles R. Churchill and Ida F. Churchill, on the basis of an inventory then taken.

That the property in controversy was included in the inventory, and appraised at $6000.00; and the inventory contained the statement that "the whole of the real estate inventoried herein as belonging to said succession was acquired by said Charles H. Churchill, previous to his marriage."

That, on the 23rd of January, 1889, a *mandamus* proceeding was filed in the Civil District Court in the name of Widow Martha F. Churchill, Charles R. Churchill, and Miss Ida Francis Churchill, the latter an emancipated minor; and, in their petition it is alleged, that taxes had been assessed against the property in controversy for the years 1876, 1878, 1879, 1880, 1881, 1882, 1883, 1884, 1885, 1886, 1887, and 1888, in favor of the city; and that the same had been registered in the mortgage office, from which a mortgage resulted in favor of the city for the taxes of those years.

The petition further represents, "that all of said taxes, and tax in-

scriptions were null and void, and should be erased and cancelled
from the respective books of the city comptroller and recorder of
mortgages, on the following grounds:

(1)   That the taxes and tax liens, privileges and mortgages are
prescribed by three and five years.

(2)   The assessments are made in the name of Charles H.
Churchill, who does not own the property; that said Charles H.
Churchill having died in 1869, his succession was duly opened in the
late Second District Court, and that the properties were community
property, and the plaintiffs herein were part owners as heirs of their
father, with their mother as widow in community.

.Upon these representations, the plaintiffs prayed for a peremptory
*mandamus* commanding and ordering the comptroller and the recorder
of mortgages to cancel and erase from the respective books of their
offices, the inscription of taxes and tax liens and privileges and mort-
gages against the property described, in the names of Charles H.
Churchill, or, the estate of Charles H. Churchill, etc.

Thereupon, a judgment was entered, to the effect, that the pro-
visional *mandamus* be made peremptory, and that the city comptroller
and the recorder of mortgages, do cancel and erase from the books of
their respective offices, the inscription of taxes, tax liens and privileges
on the property in controversy.

From that judgment, no appeal was taken, and, it, consequently,
became final.

It further appears, that this decree was filed in the proper city
offices, and brought to the attention of the board of assessors of the
parish of Orleans, and that, subsequently, and during the years men-
tioned in this suit, the property was assessed in conformity therewith
—that is to say, in the names of Martha T. Churchill, and of the
plaintiffs, as the widow and heirs of Charles H. Churchill.

It is against these assessments and the privileges and mortgages
resulting therefrom, that the present suit seeks relief for the two
plaintiffs, claiming to have inherited the property from their father,
Charles H. Churchill, as his separate property.

. In other words, the proposition we have to consider is this, that,
whereas, the property was inventoried as the separate property of
Charles H. Churchill, who died in 1869, and was subsequently assessed
to him during all the years *prior* to 1889, and from which the plaintiffs
were relieved by the *mandamus* suit and judgment, on the theory that,

as a matter of fact, the property was community and owned by them and their mother jointly, tho plaintiffs in the present suit seek to be relieved from the payment of all taxes assessed against the property *since* the year 1889, upon tho theory that the *mandamus* suit was wrong, and that, in point of fact, the property was owned by their father separately, and that their mother had no interest therein— claiming that they had no knowledge of the *mandamus* proceeding, and never authorized the institution of that suit by Charles P. John- son, who claimed to act as agent, nor by James C. Moise, who signed the petition as attorney for the relators.

The trend of all tho testimony is to that effect.

In our opinion, their pretensions cannot be entertained.

On the faith of the records of the Civil District Court, the property was assessed for a great many years as the separate property of Charles H. Churchill, from which the plaintiffs were relieved, through the effect of tho *mandamus* suit; and upon the faith of the judgment therein rendered, the assessing officers made the assessments in years subsequent thereto, from which they seek relief upon the theory, that the *mandamus* suit and judgment were erroneous.

Between the two, we are asked to render a judgment whereby the plaintiffs will be relieved from the payment of the taxes of over twenty years, by means of this circuity of action.

Before passing on this question, an examination of our jurispru- dence will be both necessary and instructive.

In Sewell vs. Watson, 31st Ann. 589, the point was made that title to property derived at a tax sale was bad, because it was assessed on the roll in the name of a man who had previously died, of which the court, speaking through Mr. Justice White as its organ, said: "This ground " of relief is not good. The property stood on the public records as " that of James H. Coleman, and was so assessed. The assessor in " listing the property for taxation, could have assessed it in no other " way than as it stood on the records of the country, unless it be con- " sidered that it was his duty to be informed of facts not public, not " to be ascertained from the condition of the property, or from its " occupants, for it had none."

In Mason vs. Bemiss, 38th Ann., 935, the charge was that the tax title was null, because the property was not assessed in the name of the true owner, and the court, through Mr. Justice Todd, said:

"It is not required of the officer charged with the assessment that before making it he should constitute himself a judge of the validity

or invalidity of the judicial proceeding upon which the title to the property purports to rest, but that the fact of possession for many years as owners, under an adjudication, would alone suffice to guide and determine him in making the assessment as relates to the ownership of the same."

In Insurance Company vs. Levi, 42nd Ann. 432, a number of pertinent cases, announcing the same doctrine, are collated and approved.

In Carter vs. City, 33rd Ann. 816, it was held, that "when the " assessment made, with certain description and in a certain name, is " valid, either of itself, or by reason of confirmatory action of the " owner, publication and judgment in the same name, and with the " same description will be upheld, if otherwise regular." Lane vs. March, 33rd Ann. 554, is to the same effect.

In Reed vs. His Creditors, 39th Ann. 115, this court applied the doctrine of equitable estoppel to a tax delinquent, who complained of the accuracy and sufficiency of assessments.

In Oteri vs. Tax Collector, 42 Ann. 374, it was held, "the contention " that some of the property assessed in plaintiff's name was not owned " exclusively by himself, but owned by himself conjointly with others, " involves only the correctness of the assessment, and cannot be urged after the expiration of the time-limit fixed in the statute." See Shattuck & Hoffman vs. City of New Orleans, 39th Ann. 206.

In Palmer vs. Board of Assessors, 42nd Ann. 1122, the court said:

"Plaintiff cannot complain that after the sale to Fishel, which was " duly recorded, the property was assessed in the name of Fishel.

"The State was guarantor of that title, and the assessors were " bound to respect it.

"It was spread upon the public records as evidencing the existing " title, and the assessors were not bound to go behind it."

In Prescott vs. Payne, 44th Ann., 650, it was said:

"But, it is equally true, that, as matter of law, the Hitchcock title " was apparently a good one, and entitled to be respected and upheld as " such until judicially investigated and declared null and void.

"This being the case, and this principle being applied to the Offut " title, it seems manifest that the assessing officer was justified in " making the assessment according to the title.

"It was certainly not his duty to institute an examination into prior " assessments, to ascertain the possible illegality of the sale to Offut; " and had he made such an examination, and found what, in his opin-

" ion, was evidence of error, or illegality in such assessment, it would
" have been unquestionably out of his power and beyond his capacity
" to so decide, possessing no judicial power.

"Accepting this view as correct, we are of the opinion that any al-
" leged errors in the title of Offut could not possibly affect an assess-
" ment made in his name during the time the property stood upon the
" record in his name."

In Augusti vs. Citizens' Bank, 46th Ann. 530, this court expressed
the opinion, "that it is made the duty of an assessor by statute, to ex-
" amine the records of the conveyance office to ascertain what taxable
" property there is in his district or parish.

"The record of deeds and conveyance and of mortgages are taken
" as the basis of the assessment.

"It does not devolve upon him to test the validity of these acts in
" order that he may ascertain in whose name to assess the property.

"If an act be not radically null upon its face, he is within the law
" in taking as correct a recorded deed interested parties have for years
" permitted to remain on the record as an adverse title, unquestioned
" and unassailed."

We have been at the pains to collate and make quotations from all
of the foregoing authorities, for the purpose of making it clear, that,
in our opinion, the defects of title which the plaintiffs suggest in their
injunction, cannot be entertained in any view that can be taken of
them.

This court is fully committed to the theory that assessors are
authorized to act upon the face of titles as they appear upon the
record, and in which interested parties have apparently acquiesced
through a series of years without making question or complaint in
the manner required by law, in order to obtain correction, or relief
therefrom.

With regard to the allegation of plaintiffs' petition, to the effect,
that they had never been served with the notice of the seizure and sale
of said property as required by law, one of the plaintiffs testified posi-
tively, that he was never served with any such notice; but, on cross-
examination admitted that Martha F. Churchill, widow of Charles H.
Churchill, was his mother, that she resided at No., 1168 St. Charles
avenue, and that he lived with her.

The other of the plaintiffs made a similar admission with respect to
her residence with her mother.

The city attorney introduced, over the objection of defendants' counsel, a notice which was signed by the city treasurer, and addressed to Martha F. Churchill, Charles R. Churchill and Miss Ida Churchill, of date April 23rd, 1895, the purport of which is, that the aforesaid parties are advised that city taxes against the property in question for the years 1883 to 1895, inclusive, "are unpaid and delinquent," and that after the expiration of twenty days from the service of this notice, if said taxes, interest and cost are not paid to the city treasurer, proceeding will be at once taken, according to law, and said property advertised and sold to satisfy said taxes, interest and cost.

The official return thereon endorsed, is that it was served "on Widow Martha F. Churchill, in person, a person apparently above the age of fourteen (14) years, residing at No. 1168 St. Charles street."

In our opinion, such a notice, addressed to those joint owners against whom the property in question had been assessed, and in whom the title appeared to be, and served upon one of the three in person at the domicile wherein all three at the time resided, is a sufficient compliance with the requirements of the revenue law. Sections 50 and 51, Act 85 of 1888, page 129.

Tax statutes are *sui generis;* and neither such a notice nor the service thereof need possess the technical sufficiency of the citation and return provided for in the Code of Practice.

There is no particular form of notice prescribed by the revenue laws.

The objection urged by counsel for plaintiffs in injunction is that no proof was administered of the capacity of the officer whose name is appended to the return, and that the return does not state his capacity.

But no such objection was urged to its admissibility at the time same was introduced and filed in evidence—the only objection then made being that the offer came too late, the case having been closed. This objection having been overruled, counsel reserved a bill of exceptions.

Necessarily, any other objection there may have existed thereto was presumably waived.

Inasmuch as no proof was administered with regard to the alleged imperfection and insufficiency of description of the property in the assessment, our inference is that that ground of complaint has been abandoned.

Entertaining these views, the judgment appealed from is erroneous, and must be reversed.

It is therefore ordered and decreed, that the judgment appealed from be annulled and reversed; and it is further ordered and decreed that the demands of the plaintiffs in injunction be rejected and disallowed, and that they pay all costs of both courts. It is further ordered that the rule taken in behalf of the city be made absolute, and that a writ of seizure and possession issue as therein prayed for, addressed to the civil sheriff of the parish of Orleans, commanding him to seize the property therein described and place the city of New Orleans in actual possession thereof, and that the defendants in rule be decreed to pay all costs of proceedings therein.